# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOSEPH HOPKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-1338-JWL |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying both Child's Insurance benefits based on disability (CDB) and Supplemental Security Income (SSI) benefits under sections 202(d), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 402(d), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's failure to discuss Plaintiff's psychiatric hospitalizations, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I. Background

Plaintiff applied for CDB and SSI alleging disability beginning July 16, 1990. (R. 14, 62-63, 162-67). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred in evaluating the medical opinion of his treating physician, Dr. Sharma, and in failing to discuss his involuntary psychiatric hospitalizations at the Rainbow Mental Health Facility in March through May, 2009.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

2

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ failed to discuss Plaintiff's involuntary psychiatric hospitalizations in March through May, 2009, which are significantly probative evidence tending to contradict the ALJ's finding that Plaintiff has had no episodes of decompensation, and tending to support the medical opinion of Dr. Sharma, who is Plaintiff's treating physician, and whose opinion the ALJ accorded only "little weight."

## II.     Analysis

Plaintiff claims that his stay at the Rainbow Mental Health Facility from March 19, 2009 through May 1, 2009 is significantly probative evidence contrary to the ALJ's finding that Plaintiff has experienced no episodes of decompensation which have been of extended duration, and that because the ALJ never discussed this hospitalization he was not able to make any inferences about Plaintiff's mental strengths and weaknesses. The Commissioner notes that the ALJ cited a portion of the treatment notes from Rainbow

4

Mental Health Facility, and argues that he clearly considered Plaintiff's treatment at Rainbow. She argues that the stay at Rainbow occurred when Plaintiff had more severe symptoms because he was not taking his medications, that his symptoms significantly improved when Plaintiff was compliant with his medication regimen, and that one month after discharge from Rainbow, Plaintiff's mother reported that he had experienced a dramatic improvement while on medications. The Commissioner argues that these facts are consistent with the ALJ's findings that Plaintiff's symptoms were milder when he was compliant with his medication regimen, and therefore, Plaintiff can show no prejudice from the ALJ's consideration of the Rainbow treatment records. The court cannot agree.

The records reveal that Plaintiff was involuntarily admitted to Rainbow for two periods in March through May, 2009. (R. 339-60). The first period was between March 11 and March 13, 2009. (R. 455-60). Those records reveal that Plaintiff was brought to the facility by his mother after he was apparently "involved in a physical altercation with his stepfather a few days ago." (R. 455). At that time his "[m]other was afraid of him if he returns home, [he] has been very agitated using profanity and threatening to kill people, and demanding to be discharged from hospital, if he does not get Xanax and cigarette he will be killing people, and claiming that he could not perform in a concert last night. He is training to be a rap artist. Also verbalized some suicidal statement to jump off a bridge, became angry, claiming 'I do not want to hear your voice,' yelling, 'I am not going to talk and I can kill someone here." (R. 455). They reveal that during the course of that stay, "[a] manual hold was necessary" to give medication injections, and "[h]e was

5

demanding to be discharged shortly after admission and calling his family insisting that they come and pick him up. He was verbally abusive. <u>The first petition to the court was not signed on time by the petitioner, and then the second petition was declined by the court and so the patient was discharged</u> on 03-13-09 at 16:05. The patient refused to be on medication and there were no scripts given." (R. 458-59) (emphasis added by court).

The records reveal that about a week later, on March 19, 2009, Plaintiff "was brought by police department to KU ER accompanied by mother. He was uncooperative but report from KUMC stated that he was threatening to hurt his stepfather and his mother. He was hostile, punched glass door, and pacing out of his room. He was physically and chemically restrained at KU ER." (R. 442). Plaintiff's "Legal Status" was shown on the "Psychiatric Admission Evaluation" as "Involuntary." Id. In this admission, Plaintiff remained focused on discharge and became abusive whenever the staff began to discuss discharge with him. (R. 450-52). On March 30, 2009, Plaintiff went AWOL from the facility, the Sheriff's department was notified, a pick-up order was issued, and Plaintiff was returned to the facility on April 2. (R. 451). Over the course of the hospitalization, there was slow and intermittent progress made, and after more than a month of inpatient treatment "[a] decision was made to discharge the patient on 05-01-09." (R. 452). "Patient's Condition at Time of Discharge" was much improved, his behavior was under control, he was able to calm down, his judgment and insight was fair, and he was sleeping and eating well. Id.

At the hearing, there was a question whether the records from Rainbow were in the record. Plaintiff's counsel noted that those records had been submitted the morning of the hearing, and the ALJ acknowledged that the records were in the administrative record at exhibit 20F, and revealed a hospitalization from March 19 through May 1, 2009. (R. 31).

In the decision, the ALJ cited Exhibit 20F, at 14 (R. 452) in support of his step two finding that Plaintiff has severe impairments of: mood disorder, not otherwise specified, cannabis dependence, and sedative abuse. (R. 16-17). Significantly, in his step three analysis, the ALJ found that "the claimant has experienced no episodes of decompensation which have been of extended duration," (R. 18); and in weighing the medical opinions the ALJ accorded only "little weight" to Dr. Sharma's medical opinion "of marked limitations in every mental functioning category." (R. 21).

As Plaintiff points out, an ALJ must consider all of the relevant evidence in the administrative record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996); see also, Soc. Sec. Ruling 96-8p, West's Soc. Sec. Reporting Serv., Rulings 143, 147-48 (Supp. 2013) (discussing evidence considered in RFC assessment). Moreover, he is further required to discuss the evidence supporting his decision, uncontroverted evidence he chooses not to rely upon, and significantly probative evidence he rejects. Id. 79 F.3d at 1009-10.

The evidence regarding Plaintiff's involuntary psychiatric hospitalizations in March through May of 2009 is significantly probative of at least one episode of decompensation which has been of extended duration, contrary to the ALJ's specific

7

finding. Therefore, it is incumbent upon the ALJ to discuss the hospitalizations and explain why he did not find at least one episode of decompensation. He did not do so.

The Commissioner's argument in her response brief, explaining why the hospitalizations would not change the ALJ's determination if he had addressed the hospitalizations amounts to no more than a post-hoc rationalization which was not relied upon by the ALJ in his decision, and may not be used by the court to affirm the decision. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). And, a reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). Here, the ALJ did not discuss the involuntary hospitalizations, those hospitalizations are significantly probative evidence contrary to the findings of the ALJ, and the court may not create a post hoc rationalization to affirm the ALJ's decision. Therefore, remand is necessary for the ALJ to consider the significance of those hospitalizations.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 12th day of February 2014, at Kansas City, Kansas.


                                                  s:/ John W. Lungstrum  
                                                **John W. Lungstrum**  
                                                **United States District Judge**